**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DEBORAH LAUFER, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:20-CV-943 (JCH) |
| | : | |
| v. | : | |
| | : | |
| GANESHA HOSPITALITY, LLC, | : | |
| Defendant. | : | MARCH 25, 2021 |
| | : | |
| | : | |

**RULING ON MOTION TO DISMISS SECOND AMENDED COMPLAINT (DOC. NO. 24)**

**I.    INTRODUCTION**

Plaintiff, Deborah Laufer ("Laufer"), brings this action under the Americans with Disabilities Act (the "ADA"), seeking injunctive relief, attorney's fees, and costs and expenses.  See Second Am. Compl. (Doc. No. 23).  The defendant, Ganesha Hospitality, LLC ("Ganesha Hospitality"), has filed a Motion to Dismiss the Second Amended Complaint, for lack of standing and failure to state a claim.  See Def.'s Mot. to Dismiss Pl.'s Second Am. Compl. ("Def.'s Mot.") (Doc. No. 24).  Laufer opposes this Motion.  See Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") (Doc. No. 31).

For the reasons below, the Motion to Dismiss is denied.

**II.    BACKGROUND**

A.    Allegations in the Second Amended Complaint

Deborah Laufer, a Florida resident, experiences multiple physical limitations. Second Am. Compl. ¶ 1.  She requires a cane or wheelchair to move about in the world, her vision is impaired, and she cannot pinch, twist, or tightly grasp with her hands.  Id.

Due to these limitations, Laufer requires certain accommodations at buildings that she visits, such as wheelchair ramps.  Id.

Laufer identifies as a "tester", meaning that she devotes time to "monitoring, ensuring, and determining whether places of public accommodation and their websites are in compliance with the ADA."  Id. 2.  As part of these efforts, Laufer developed a "system" for monitoring whether online reservations systems used by hotels comply with requirements codified at section 36.302(e) of title 28 of the Code of Federal Regulations.  Id. ¶ 11.  She "maintains a list of all hotels she has sued with several columns following each."  Id.  Laufer "continually updates this list", including by recording the dates on which she visits hotels' online reservations systems and indicating future dates on which she revisits the online reservations systems.  Id.

It is Laufer's practice to visit a hotel's online reservations system "multiple times" before filing a lawsuit against a given hotel.  Id.  She "then visits again shortly after the complaint is filed."  Id.  If Laufer obtains a judgment against a hotel or enters into a settlement agreement with a hotel, she records in her list "the date by which the hotel's online reservations system must be compliant [with section 36.302(e)]."  Id.  She then revisits hotels' online reservations systems on those dates.  Id.  Laufer asserts that, through her tracking system, she becomes "continuously aware that the subject websites remain non-compliant."  Id. ¶ 12.

Ganesha Hospitality owns the Quality Inn Cromwell ("the Inn"), a hotel located in Cromwell, Connecticut.  Id. ¶¶ 3, 9.  Ganesha Hospitality accepts reservations for the Inn through multiple websites.  Id. ¶ 9.  Prior to filing her initial Complaint in this case, Laufer visited these websites "for the purpose of reviewing and assessing accessible

2

features at the [Inn] and ascertain[ing] whether they meet the requirements of [section 36.302(e) of title 28 of the Code of Federal Regulations] and her accessibility needs." Id. ¶ 10.

Laufer visited webpages offering reservations at the Inn on the following websites: www.expedia.com, www.hotels.com, www.booking.com, www.orbitz.com, and www.agoda.com. Id. ¶ 10. She discovered that each webpage failed to identify accessible rooms or allow for the option of reserving accessible rooms. Id. Additionally, on www.expedia.com, www.hotels.com, and www.orbitz.com, "[n]o information was given about accessibility in the hotel other than the statements 'Wheelchair-accessible path of travel', 'Wheelchair-accessible parking' and "In-room accessibility.'" Id. ¶ 10(A), (B), (D). On www.booking.com, "[n]o information was given about accessibility in the hotel other than the statements 'Facilities for disabled guests', 'Wheelchair accessible', 'Raised toilet', 'Toilet with grab rails' and 'Accessible parking.'" Id. ¶ 10(C). On www.agoda.com, "[n]o information was given about accessibility in the hotel other than the statements 'Wheelchair accessible' and 'Facilities for disabled guests.'" Id. ¶ 10(E). By virtue of her tracking system, Laufer "intends to revisit" these webpages "[i]n the near future." Id. ¶ 11.

Laufer asserts that she "has suffered, and continues to suffer, frustration and humiliation" on account of the webpages' "discriminatory conditions", which "contribute[ ] to [Laufer]'s sense of isolation and segregation." Id. ¶ 13. Laufer further asserts that the webpages "deprive[ ] [her] of the same advantages, privileges, goods, services and benefits readily available to the general public." Id.

Laufer does not allege that she has ever visited the Inn before.  Id.  Nor does she allege that she intends to visit the Inn, specifically, in the future.  Id.  However, she "has traveled throughout the State of Connecticut on prior occasions and intends to travel throughout the entire State as soon the [COVID-19] crisis is over."  Id.  Laufer represents that this future trip to Connecticut will "include[ ] the area in which [the Inn] is located", and that she "will be staying in hotels."  Id.  Laufer will use online reservations systems (such as the webpages offering reservations at the Inn) to "compare hotels and their accommodations and select hotels which are accessible to her."  Id.

B.    Procedural History

Laufer filed her initial Complaint on July 8, 2020.  See Compl. (Doc. No. 1).  She then filed her First Amended Complaint on July 27, 2020.  See Am. Compl. (Doc. No. 9).  Ganesha Hospitality moved to dismiss the First Amended Complaint, for lack of standing and failure to state a claim, on August 3, 2020.  See Def.'s Mot. to Dismiss (Doc. No. 16).[1]

Laufer filed her Second Amended Complaint on September 17, 2020.  See Second Am. Compl.; Order (Doc. No. 22) (granting leave to file).  Ganesha Hospitality moved to dismiss the Second Amended Complaint on September 22, 2020.  See Def.'s Mot.  Laufer filed a Memorandum in Opposition on October 13, 2020.  See Pl.'s Opp'n.  Ganesha Hospitality filed a Reply on October 16, 2020.  See Def.'s Reply to Pl.'s Opp'n to Mot. to Dismiss Second Am. Compl. ("Def.'s Reply") (Doc. No. 32).

---

[1] The court terminates as moot Ganesha Hospitality's Motion to Dismiss the First Amended Complaint (Doc. No. 16), on account of Laufer's Second Amendment Complaint and Ganesha Hospitality's Second Motion to Dismiss.

4

Both parties have submitted multiple Notices of Additional Authority, as well as Responses to each other's Notices.  See Docs. Nos. 26, 27, 29, 30, 33, 34, 35, 41, 42, 45, 46, 48, 53, 54.  These Notices bring to the court's attention recent court decisions addressing standing under the ADA, including decisions in cases filed by Laufer.

## III.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  A plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence.  Id.  When determining whether to dismiss for lack of subject matter jurisdiction, a court may consider affidavits.  All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 (2d Cir. 2006).  A court also "has discretion to hold a hearing to resolve factual disputes that bear on the court's jurisdiction."  Saleh v. Sulka Trading, 957 F.3d 348, 353 (2d Cir. 2020).  However, a court must otherwise "accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor."[2]   Id.

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

---

[2] The Second Circuit's decision in Dorchester Financial Services, Inc. v. Banco BRJ, S.A., 722 F.3d 81 (2d Cir. 2013), which observed that a court may, in certain circumstances, "leave [a] jurisdictional issue for [ ] trial," does not apply to this case.  Id. at 87 (citation omitted).  The jurisdictional issue in Dorchester Financial Services was personal jurisdiction.  Id.  "If a plaintiff lacks standing, the federal courts have no business deciding the case, or expounding the law in the course of doing so."  Disability Advocs., Inc. v. N.Y. Coal. for Quality Assisted Living, Inc., 675 F.3d 149, 162 (2d Cir. 2012) (brackets, quotation marks, and citation omitted).

relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u>  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor.  <u>See La Liberte v. Reid</u>, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  <u>Iqbal</u>, 556 U.S. at 678.

## IV.    DISCUSSION

### A.    <u>Standing</u>

Ganesha Hospitality argues that Laufer has not shown that she suffered an injury in fact, and that Laufer therefore lacks standing to bring her ADA claim.  <u>See</u> Def.'s Mem. of Law in Supp. of Mot. to Dismiss Pl.'s Second Am. Compl. ("Def.'s Mem.") (Doc. No. 24-1) at 5-7.  The requirement that a plaintiff demonstrate standing to prosecute an action stems from Article III of the U.S. Constitution, which "extend[s]" "[t]he judicial Power" of the United States only to "Cases" and "Controversies."  U.S. Const. art. III, § 2; <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547 (2016).  To establish standing, a plaintiff must satisfy three elements: (1) an "injury in fact"; (2) a "fairly traceable" nexus between said injury and a defendant's conduct; and (3) a likelihood that said injury would "be redressed by a favorable judicial decision."  <u>Spokeo</u>, 136 S. Ct. at 1547 (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992), and <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.</u>, 528 U.S. 167, 180-81 (2000)).

The court notes that this case concerns the intersection of three types of cases pertaining to the injury-in-fact element of standing: cases involving violations of statutory rights pertaining to information, cases involving challenges to physical inaccessibility under the ADA, and cases filed by "testers."  Neither the Supreme Court nor the Second Circuit--nor any other circuit, to the court's knowledge--has addressed this precise doctrinal intersection in a published opinion.  District courts reviewing similar allegations by Laufer have disagreed over whether such allegations demonstrate an injury in fact. Compare, e.g. Laufer v. Dove Hess Holdings, LLC, No. 5:20-CV-379 (BKS/ML), 2020 WL 7974268, at *17 (N.D.N.Y. Nov. 18, 2020) (concluding that similar allegations did not demonstrate an injury in fact, but permitting Laufer to seek leave to further amend) and Laufer v. Lily Pond LLC C Series, No. 20-CV-617 (WMC), 2020 WL 7768011, at *5 (W.D. Wisc. Dec. 30, 2020) (concluding that similar allegations were sufficient to show that Laufer suffered an injury in fact).

To meet the injury-in-fact requirement, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560).  An injury is particularized if it "affect[s] the plaintiff in a personal and individual way."  Id. (citation omitted).  An injury is concrete if it "actually exist[s]."  Id. (citation omitted).  Further, "[a]lthough tangible injuries are perhaps easier to recognize . . . intangible injuries can nevertheless be concrete."  Id. at 1549 (citations omitted).  The Supreme Court has emphasized "that an injury in fact must be both concrete and particularized."  Id. at 1548 (citations omitted).

7

1.      Statutory Rights Pertaining to Information

Violations of some, but not all, statutorily recognized rights pertaining to information give rise to injuries that are both concrete and particularized, without additional allegations.  In Federal Election Commission v. Akins, 524 U.S. 11 (1998), the Supreme Court concluded that a group of voters had standing to file a lawsuit seeking an order that would require a specific organization "to make public the information that the [Federal Election Campaign Act] demands of a 'political committee.'"  Id. at 16.  As the Court explained, "the informational injury at issue [ ] directly related to voting, the most basic of political rights" and therefore was "sufficiently concrete and specific."  Id. at 24-25.

More recently, in Spokeo v. Robins, Inc., the Supreme Court held that not all violations of the Fair Credit Reporting Act (FCRA) result in a concrete injury.  136 S. Ct. at 1550.  One of the provisions of the FCRA at issue "required consumer reporting agencies to 'follow reasonable procedures to assure maximum possible accuracy of' consumer reports."  Id. at 1545 (quoting 15 U.S.C. § 1681e(b)).  The plaintiff alleged that the defendant had disseminated incorrect information about the plaintiff, namely that "he is married, has children, is in his 50's, has a job, is relatively affluent, and holds a graduate degree."  Id. at 1546.

The Supreme Court remanded in that case, on the ground that the Court of Appeals had improperly collapsed the concreteness and particularization requirements into a single inquiry.  Id. at 1550.  Although the Supreme Court did not address whether the plaintiff's allegations met the concreteness requirement, the Supreme Court offered

the following hypothetical of a violation of the FCRA that would fall short of showing a concrete injury:

> [N]ot all inaccuracies cause harm or present any material risk of harm.  An example that comes readily to mind is an incorrect zip code.  It is difficult to imagine how the dissemination of an incorrect zip code, without more, would work any concrete harm.

Id.

At the same time, citing Akins, the Supreme Court reaffirmed that plaintiffs asserting certain types of statutory violations "need not allege any additional harm beyond the one Congress has identified.  Id. at 1549 (citing Akins, 524 U.S. at 20-25) (other citation omitted).  As the court explained, Congress cannot grant constitutional standing to a plaintiff who has not suffered an injury in fact, but Congress can create a cause of action aimed at redressing an injury in fact for which a cause of action did not previously exist.  See id.

Further, the Supreme Court discussed general principles for determining when allegations of additional harm are needed.  First, courts should "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  Id. at 1549 (citation omitted).  Second, "because Congress is well-positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important.  Id.

Following Spokeo, the Second Circuit concluded, in Strubel v. Comenity Bank, 842 F.3d 181 (2d Cir. 2016), that two out of a plaintiff's four claims under the Truth in

Lending Act were sufficient to show an injury in fact, without additional allegations.  Id. at 190-94.  As the court recounted, the plaintiff

> faulted [the defendant] for failing clearly to disclose that (1) cardholders wishing to stop payment on an automatic payment plan had to satisfy certain obligations; (2) the [defendant] bank was statutorily obliged not only to acknowledge billing error claims within 30 days of receipt but also to advise of any corrections made during that time; (3) certain identified rights pertained only to disputed credit card purchases for which full payment had not yet been made, and did not apply to cash balances or checks access credit card account; and (4) consumers dissatisfied with a credit card purchase had to contact [the defendant] in writing or electronically.

Id. at 185-86.  The Second Circuit concluded that the third and fourth of these challenges required no additional allegations in order to show an injury in fact.  Id. at 190-91.  As the court explained, these challenges pertained to "how the consumer's own actions can affect his rights with respect to credit transactions."  Id. at 190. Therefore, "a creditor's alleged violation of each notice requirement, by itself, gives rise to a 'risk of real harm' to the consumer's concrete interest in the informed use of credit." Id. (quoting Spokeo, 136 S. Ct. at 1549).

In contrast, the plaintiff lacked standing to bring the first challenge, because it was "undisputed that [the defendant] did not offer an automatic payment plan."  Id. at 191.  The plaintiff lacked standing to bring the second challenge, because the defendant had in fact corrected the error at issue within 30 days.  Id. at 193.

Subsequently, in Crupar-Weinman v. Paris Baguette America, Inc., 861 F.3d 76 (2d Cir. 2017), the Second Circuit held that a claim under the Fair and Accurate Credit Transactions Act (FACTA) alleging improper inclusion of a credit card expiration date on a receipt was insufficient, on its own, to show a concrete injury.  Id. at 81-82.  The court framed its "inquiry . . . [as] whether [the defendant]'s alleged bare procedural violation--

10

printing [the plaintiff]'s credit card expiration date on receipt--presents a material risk of

harm to the underlying concrete interest Congress sought to protect in passing FACTA."

Id. at 81.  The court "f[ou]nd it dispositive that in 2007, Congress clarified [ ] in the Credit

and Debit Card Receipt Clarification Act of 2008 . . . that Congress did not think that the

inclusion of a credit card expiration date on receipt increases the risk of material harm of

identity theft."  Id.

> 2.    Physical Inaccessibility under the ADA

In cases involving challenges to physical obstacles under the ADA, the Second

Circuit has examined plaintiffs' proximity to public accommodations and the likelihood

that they would actually visit such accommodations, but for the presence of physical

obstacles.  Specifically, the Second Circuit has stated that a plaintiff has standing to

bring an ADA claim if:

> (1) the plaintiff alleged past injury under the ADA; (2) it [i]s reasonable to infer
> that the discriminatory treatment would continue; and (3) it [i]s reasonable to
> infer, based on the past frequency of plaintiff's visits and proximity of [a public
> accommodation] . . . to plaintiff's home, that plaintiff [would] attempt[ ] to return to
> the subject location.

Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 187-88 (2d Cir. 2013) (per curiam)

(citing Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008) (per curiam)).

Applying this framework, the Second Circuit held, in Kreisler v. Second Avenue

Diner Corp., that a plaintiff had standing to bring a claim under the ADA against a diner

he had never attempted to enter.  Id. at 188.  As the court explained, the plaintiff alleged

that he lived near the diner and frequented other nearby diners but was deterred from

attempting to enter the diner in question, on account of a "seven to eight-inch step" that

rendered the diner's entrance inaccessible to people (such as the plaintiff) who use

11

wheelchairs.  Id.  The plaintiff also alleged that "he would like to frequent the Diner if he were able to access it."  Id.  The Second Circuit concluded that "deterrence constitutes an injury under the ADA," and that the plaintiff therefore could "establish[ ] a concrete and particularized injury" without "attempt[ing] to overcome an obvious barrier."  Id.

Moreover, the Second Circuit held that, because the plaintiff had "standing to pursue injunctive relief as to the Diner's entrance," he could also "seek removal of all barriers inside the Diner related to his disability that he would likely encounter were he able to access the Diner."  Id.  The court reasoned that "[t]his rule comports with and furthers the purpose of the ADA, which . . . 'generously confer[s] the right to be free from disability-based discrimination.'"  Id. (quoting Fulton v. Goord, 591 F.3d 37, 42 (2d Cir. 2009)).

Roughly a month later, in a summary order in Harty v. Greenwich Hospitality Group, LLC, 536 F. App'x 154 (2d Cir. 2013) (summary order)--a focus of the parties in the current case--the Second Circuit determined that a Florida resident lacked standing to bring an ADA claim against a Connecticut hotel, because he "failed adequately to demonstrate a basis for inferring that he will return to Stamford, Connecticut for an overnight stay."  Id. at 155.  The basis for the plaintiff's claim was that he had "encountered architectural barriers" during a past visit to the Connecticut hotel at issue. Harty v. Greenwich Hosp. Grp., No. 3:11-CV-1759 (AVC), 2012 WL 12895677, at *1 (D. Conn. Oct. 31, 2012).  Additionally, the plaintiff alleged that "he often visits family in Nyack, New York, a short distance from Stamford."  Harty, 536 F. App'x at 155.  The Second Circuit, noting that the plaintiff "specifie[d] only a single occasion on which he

12

stayed overnight in Stamford" in the past, concluded that there was an insufficient basis for inferring that the plaintiff would return to Stamford.  Id.

        3.    "Testers"

The Supreme Court and Second Circuit have acknowledged the role of "testers" in the enforcement of certain statutory rights.  A tester is someone who engages in conduct for the purpose of filing a lawsuit aimed at ensuring a defendant's compliance with statutory requirements.  See Havens Realty Corp. v. Coleman, 455 U.S. 363, 373 (1982).  Generally, a plaintiff's status as a tester does not hurt a plaintiff's effort to show an injury in fact.

In Havens Realty Corp. v. Coleman, the Supreme Court held that plaintiffs "who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices," may bring claims under the Fair Housing Act (FHA).  455 U.S. at 373.  The statutory prohibition at issue made it unlawful for a covered entity "[t]o represent to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available."  Id. (quoting 42 U.S.C. § 3604(d)).  The Supreme Court reasoned that the fact that "the tester may have approached the real estate agent . . . without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of [the FHA]."  Id. at 374.  A decade later, the Second Circuit extended this holding to FHA testers who "challenged advertisements . . . [that] indicate[d] a racial preference."  See Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898, 904 (2d Cir. 1993).

13

Although neither the Supreme Court nor the Second Circuit has addressed the role of testers in enforcement of the ADA in a published decision, a pair of Second Circuit summary orders illustrate how tester status can have little or no impact on standing.  In Harty v. Greenwich Hospitality Group, discussed above, the Second Circuit noted in passing that the plaintiff's "assertion that he visits public accommodations as an ADA 'tester'" did not bolster his claim of injury, because it did nothing to support an inference that the plaintiff would return to Stamford, Connecticut.  536 F. App'x at 155.  Meanwhile, in Harty v. Simon Property Group, L.P., 428 F. App'x 69 (2d Cir. 2011) (summary order), the Second Circuit found that the same plaintiff had standing to bring an ADA claim against a New York mall.  Id. at 71-72.  The court concluded that the plaintiff's allegations that he had friends and family in the area of the mall, that he attended gun shows across the country, and that he was interested in attending specific gun shows near the mall supported an inference that he would return to the mall.  Id. at 71.  The Second Circuit noted that the plaintiff stated that he was interested in returning to the mall as a customer and "as a tester to determine whether the property has been made ADA compliant."  Id. (internal quotation marks omitted).  Thus, tester status generally neither precludes nor bestows standing to bring claims under the ADA.

    4.  Application to Laufer's Allegations

Laufer's allegations lie at the intersection of these three lines cases.  Her claim, brought pursuant to the ADA, alleges that her statutory rights were violated when she was unable to access sufficient information from the online reservations systems to determine whether the Inn is accessible to her.  Second Am. Compl. ¶¶ 6-18.  She is a tester, meaning that one motivation for her visits to the online reservations systems is to

monitor compliance with the ADA and regulations issued pursuant to the ADA.  Id. ¶ 11.

However, as discussed above, her status as a tester is not probative of the issue of

standing.  See infra, at 13-14.

Section 12182(a) of title 42 of the U.S. Code provides that

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).  Through this provision, the ADA "generously confer[s] the right

to be free from disability-based discrimination."  Kreisler, 731 F.3d at 188 (citation

omitted).  Section 12188(a)(1) establishes a cause of action available "to any person

who is being subjected to [such] discrimination on the basis of disability."  42 U.S.C. §

12188(a)(1).

Section 12182(b) governs the construction of the term "discrimination", for the

purposes of the ADA.  See 42 U.S.C. § 12182(b).  This provision includes subsection

12182(b)(2)(A)(ii), which specifies that

> discrimination includes . . . a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations[.]

Id. § 12182(b)(2)(A)(ii).

Section 12186(b) authorizes the Department of Justice (DOJ), through the

Attorney General, to issue regulations implementing the ADA's prohibition against

disability-based discrimination.  See 42 U.S.C. § 12186(b).  Pursuant to this provision,

15

the DOJ promulgated section 36.302(e)(1)(ii) of title 28 of the Code of Federal

Regulations, which requires that

> [a] public accommodation that owns, leases (or leases to), or operates a place of
> lodging shall, with respect to reservations made by any means, including by
> telephone, in-person, or through a third party . . . [i]dentify and describe
> accessible features in the hotels and guest rooms offered through its
> reservations service in enough detail to reasonably permit individuals with
> disabilities to assess independently whether a given hotel or guest room meets
> his or her accessibility needs[.]

28 C.F.R. § 36.302(e)(1)(ii).

As already noted, this court is not the first to review an ADA claim filed by Laufer

challenging a hotel's inclusion of insufficient information in online reservations systems.

District courts have divided over whether, in cases involving similar allegations, Laufer

has shown an injury in fact.  Compare, e.g. Dove Hess Holdings, LLC, 2020 WL

7974268, at *17 (concluding that similar allegations did not demonstrate an injury in

fact, but permitting Laufer to seek leave to further amend) and Lily Pond LLC C Series,

2020 WL 7768011, at *5 (concluding that similar allegations were sufficient to show that

Laufer suffered an injury in fact).

Courts that have found similar allegations to be inadequate to establish standing

have generally concluded that Laufer must allege that her visits to online reservations

systems were for the purpose of planning a trip.  See, e.g., Dove Hess Holdings, LLC,

2020 WL 7974268, at *15 ("[T]o establish a real and immediate threat of repeated injury,

a plaintiff must demonstrate that her intent to return to the website to book a room, or at

least to obtain information that would allow her to decide whether to book a room, is

plausible."); Laufer v. Ft. Meade Hosp., LLC, No. 8:20-CV-1974, 2020 WL 6585955, at

*4 (D. Md. Nov. 10, 2020) ("But Laufer pleads nothing about her intent or ability to

access these very hotel services in person.").  Thus, the U.S. District Court for the Northern District of New York concluded that Laufer lacked standing to bring an ADA claim for injunctive relief because, although she plausibly alleged that she would use the defendant's online reservations systems in connection with a future trip, Laufer alleged that her past visits to the online reservations systems were for monitoring purposes only.[3]  See Dove Hess Holdings, LLC, 2020 WL 7974268, at *17.  That court reasoned that "a rule allowing pure testers to sue website for ADA violations 'admits of no limiting principle' . . . [thereby] entirely eviscerating the limitation on standing imposed by Article III."  Id. at *14 (quoting Griffin v. Dep't of Labor Fed. Credit Union, 912 F.3d 649, 657 (4th Cir. 2019)).  Additionally, that court quoted from a decision by the U.S. District Court for the District of New Jersey for the proposition that "[a] tester without disabilities would have encountered the same difficulty in assessing the accessible features of [the defendant's property]."  Id. (quoting Hernandez v. Caesars License Co., LLC, No. 19-CV-6090 (RBK/KMW), 2019 WL 4894501, at *4 (D.N.J. Oct. 4, 2019)).

In contrast, courts that have found similar allegations by Laufer sufficient to establish standing have generally concluded that Laufer need not put forth additional allegations beyond a violation of the ADA.  See, e.g., Lily Pond LLC C Series, 2020 WL 7768011, at *4 ("Here, the ADA created a right to be free from discrimination in evaluating the websites of 'places of accommodation,' which right is violated when required information is not provided."); Laufer v. U.L.S.T., LLC, No. 20-CV-3527 (GF),

---

[3] As explained above, supra at 11, the Second Circuit has required ADA plaintiffs seeking injunctive relief to allege both a past injury and a risk of a future injury.  See Kreisler, 731 F.3d at 187-88.

2020 WL 6487199, at *4 (N.D. Ill. Nov. 4, 2020) ("Thus, even absent even a concrete

plan to visit Johnsburg, Laufer has standing to bring this ADA suit.").  In concluding that

similar allegations by Laufer showed standing, the U.S. District Court for the Western

District of Wisconsin noted that the Supreme Court's decision in "Havens Realty . . .

certainly supports the proposition that discrimination can occur even in the context of a

test situation, without inquiry into the tester's underlying motive."  Lily Pond LLC C

Series, 2020 WL 7768011, at *4.  Further, the Western District of Wisconsin reasoned

that "the ADA created a right to be free from discrimination . . . which right is violated

when required information is not provided."  Id.  As the Western District of Wisconsin

concluded, informational injuries do suffice to support Article III Standing.  Id. at *3-4.

While recognizing that this case presents a difficult issue on standing,[4] the court

concludes that the decisions by courts that have found Laufer's allegations sufficient to

show standing are more consistent with the Second Circuit and Supreme Court

precedents discussed above.  The disability-based discrimination Laufer complains of

occurs each time she visits the Inn's website and is unable to discern, given her

particular limitations, whether the Inn is accessible to her.  Each time she visits the

online reservations system and confronts this situation, she faces "a failure to make

reasonable modifications in policies, practices, or procedures . . . necessary to afford [ ]

goods, services, facilities, privileges, advantages, or accommodations" to her.  42

---

[4] As another district court observed, in the course of finding that similar allegations by a different plaintiff established standing, "ADA website cases are somewhat tricky because courts nationwide are trying to fit the square peg of an online injury into the round hole of traditional standing analysis . . . [with] little authoritative guidance."  Parks v. Richard, No. 2:20-CV-227 (SPC), 2020 WL 2523541, at *2 (M.D. Fl. May 18, 2020).

U.S.C. § 12182(b)(2)(A).  The ADA recognizes that "discrimination includes . . . [such] a failure."  Id.

The focus on geographic proximity in cases involving ADA challenges to physical barriers is not suited to Laufer's claim.  Laufer does not allege that there is anything wrong with the structure or physical amenities of the Inn.  It is therefore irrelevant whether she has or will likely visit the Inn; the harm for which she seeks a remedy would not result from her visiting the Inn--it occurs via the Internet, on the online reservations systems.  The court recognizes that this means geography does not constrain Laufer's ability to file lawsuits against hotels across the country.  However, this is the result of the application of the ADA's generous protections to the Inn's expansive use of the Internet to solicit customers across the country.[5]  Further, it is not the case that "a rule allowing pure testers to sue website for ADA violations 'admits of no limiting principle.'"  See Dove Hess Holdings, LLC, 2020 WL 7974268, at *14 (quoting Griffin, 912 F.3d at 657).[6]  Laufer must allege that the specific information offered in an online reservations system is insufficient for her to assess whether a hotel is accessible to her, given her

---

[5] As the Supreme Court has explained, "[t]he fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance."  Spokeo, 136 S. Ct. at 1548 n.7.  "The victims' injuries from a mass tort, for example, are widely shared, to be sure, but each individual suffers a particularized harm."  Id.  Just as a tortfeasor who commits a mass tort cannot escape liability by injuring many people, under the ADA and its implementing regulations, owners of hotels who engage in disability-based discrimination by including deficient information on their online reservations systems cannot escape liability on account of the great number of people who might visit these online reservations systems.

[6] In Griffin, the Fourth Circuit held that the plaintiff, who was prohibited by the Federal Credit Union Act of 1934 from joining the defendant credit union, lacked standing to maintain an ADA claim challenging the accessibility of the credit union's website.  912 F.3d at 655-57.  Laufer is not barred by law from visiting the Inn or its online reservations systems.

19

particular physical limitations.  To the extent that a narrower limiting principle is desirable as a practical or policy matter, it is not this court's role to craft such a limit.

Cases addressing "bare procedural violation[s]", see Spokeo, 126 S. Ct. at 1550, are also a poor fit for the court's analysis of Laufer's claim.  The Supreme Court used that term in Spokeo to describe "procedures designed to decrease th[e] risk" that individuals will suffer the type of injury against which a statute protects.  Id.  As an example, the Supreme Court observed that, "even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate."  Id.  Similarly, in Strubel, the Second Circuit examined whether the defendant's failure to include required information in notices gave "rise to a 'risk of real harm' to the consumer's concrete interest in the informed use of credit."  842 F.3d at 190 (quoting Spokeo, 136 S. Ct. at 1549).

In contrast, the ADA provides that "discrimination includes . . . a failure to make reasonable modifications in policies, practices, or procedures . . . to afford [ ] goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii) (emphasis added).  The online reservations systems are used by Ganesha Hospitality to afford the Inn's services and facilities to individuals.  Thus, Laufer's claim is that the deficiency in the information she received was itself disability-based discrimination.  The Supreme Court reaffirmed in Spokeo that statutes may provide causes of action for informational harms for which a plaintiff "need not allege any additional harm beyond the one Congress has identified.  136 S. Ct. at 1549 (citing Akins, 524 U.S. at 20-25).   With respect to the definitions of disability-based discrimination included in the ADA, Congress's "judgment is [ ] instructive and

important." See id.  This informational harm is the type of injury that Laufer asserts here.[7]

Therefore, the court concludes that Laufer need not allege that her visits to the online reservations systems are for the purpose of planning a trip.[8]  Laufer's claimed injury is concrete, because she alleges "a failure to make reasonable modifications in policies, practices or procedures . . . to afford" the Inn's "services, facilities, privileges, advantages, or accommodations" to her, and she is an "individual[ ] with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).  Her claimed injury is particularized, because she alleges that she was unable access online information about the Inn that would allow her to determine whether the Inn is accessible to her, given her own particular limitations, including limited mobility and limited use of her hands.  See Second Am. Compl. ¶¶ 1, 10.

Further, although Ganesha Hospitality does not address the other two elements of standing, the court concludes that Laufer allegations show that her claimed injury is fairly traceable to Ganesha Hospitality's conduct and would likely be remedied by a favorable judicial decision.  See Spokeo, 136 S. Ct. at 1547.  Laufer alleges that Ganesha Hospitality "accepts reservations" for the Inn through the online reservations

---

[7] Some courts have held that Laufer also has standing because she "alleges dignitary harm arising from the defendant's alleged non-compliance."  See Lily Pond LLC C Series, 2020 WL 7768011, at *4.  In this case, Laufer states that she "has suffered, and continues to suffer, frustration and humiliation" on account of the webpages' "discriminatory conditions", which "contribute[ ] to [Laufer]'s sense of isolation and segregation."  Second Am. Compl. ¶ 13.  Given the court's conclusion that Laufer has standing because the deficient information included on the online reservations systems constitutes discrimination within the meaning of the ADA, the court need not assess whether Laufer also has standing under a separate theory of dignitary or stigmatic harm.

[8] Given the court's conclusion that Laufer need not show an intent to visit the Inn or plan a trip near the Inn, the court concludes that discovery on this issue is not necessary.

systems, and she seeks an injunction ordering Ganesha Hospitality "to alter the subject websites to make them readily accessible and useable to [Laufer]."  Second Am. Compl. ¶¶ 9, 20.  Further, Laufer plausibly alleges that she has visited the online reservations systems in the past and will do so again in the future.  Id. ¶¶ 10-11, 13.  Therefore, the court concludes that Laufer has standing and can seek injunctive relief for her claim. See Kreisler, 731 F.3d at 187-88.  The Motion to Dismiss the Second Amended Complaint is denied as to Ganesha Hospitality's argument that Laufer lacks standing.

      B.     The Second Amended Complaint States a Discrimination Claim

Ganesha Hospitality also moves for dismissal on the ground that the Second Amended Complaint fails to state a claim for disability-based discrimination under the ADA.  Specifically, Ganesha Hospitality argues that, by requiring places of public accommodation to provide information sufficient for individuals with disabilities to determine whether such places are accessible to them, section 36.302(e)(1) "impose[s] an obligation beyond what the statutory provisions of the ADA mandate."  Def.'s Mem. at 11.

As explained above, section 12186(b) of title 28 of the U.S. Code authorizes the Department of Justice (DOJ), through the Attorney General, to issue regulations implementing the ADA's prohibition against disability-based discrimination.  See 42 U.S.C. § 12186(b).  Regulations issued by the Department of Justice pursuant to this provision are entitled to deference, in accordance with the framework articulated in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984), by the Supreme Court.  Bragdon v. Abbott, 524 U.S. 624, 646 (1998).  Thus, the court must first determine "whether Congress has clearly spoken to the question at issue."

22

Mizrahi v. Gonzales, 492 F.3d 156, 158 (2d Cir. 2007) (citations omitted).  If not, the

court proceeds to "Chevron step two, which instructs [courts] to defer to an agency's

interpretation of the statute, so long as it is 'reasonable.'"  Id. (citations omitted).  An

agency's interpretation is reasonable if it is "based on a permissible construction of the

statute."  Chevron, U.S.A., 567 U.S. at 843.

> Section 12182(b)(2)(A)(ii), states that
>
> discrimination includes . . . a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations[.]

42 U.S.C. § 12182(b)(2)(A)(ii).  Ganesha Hospitality argues that this provision "does not

require places of public accommodation to provide detailed information about their

handicap accessible features."  Def.'s Mem. at 11.  Thus, at step one, the court

considers whether "Congress has clearly spoken" to this issue in the plain language of

the statute.  See Mizrahi, 492 F.3d at 158.  The court concludes that section

12182(b)(2)(A)(ii), which broadly speaks of "reasonable modifications in policies,

practices, or procedures . . . necessary to afford [ ] goods, services, facilities, privileges,

advantages, or accommodations" does not unambiguously address whether or to what

extent places of public accommodation must disclose information about accessibility.

See 42 U.S.C. § 12182(b)(2)(A)(ii).

The court therefore proceeds to step two and considers whether the regulation is

a permissible interpretation of the statute.  Section 36.302(e)(1)(ii) of title 28 of the Code

of Federal Regulations requires that

> [a] public accommodation that owns, leases (or leases to), or operates a place of
> lodging shall, with respect to reservations made by any means, including by
> telephone, in-person, or through a third party . . . [i]dentify and describe
> accessible features in the hotels and guest rooms offered through its
> reservations service in enough detail to reasonably permit individuals with
> disabilities to assess independently whether a given hotel or guest room meets
> his or her accessibility needs[.]

28 C.F.R. § 36.302(e)(1)(ii).  Although the court has not identified a case applying the

Chevron framework to section 36.302(e)(1)(ii), the court finds instructive a recent

unpublished decision of the Eleventh Circuit involving this regulation and similar

allegations.  In that case, Kennedy v. Siesta Inn & Suites, Inc., 828 F. App'x 658 (11th

Cir. 2020) (per curiam), the Eleventh Circuit held that a defendant hotel's submission of

screenshots purporting to show that it had updated its website did not moot the

plaintiff's claim under section 36.302(e)(1)(ii) and the ADA.[9] Id. at 661-63.  In the

course of addressing mootness, the Eleventh Circuit noted that a guidance document

published by the Department of Justice recounted the "many complaints" the

Department had received from "individuals who have reserved an accessible room only

to discover upon arrival that the room they reserved . . . is not accessible [to them]." Id.

at 661 (quoting Dep't of Justice Ams. with Disabilities Act Title III Regulations,

Nondiscrimination on the Basis of Disability by Pub. Accommodations and in

Commercial Facilities (2010) at 65-196).  Given this context, the court has little trouble

concluding that section 36.302(e)(1)(ii) is a permissible interpretation of section

---

[9] In addition, although the Eleventh Circuit did not address standing in Kennedy, the court notes
that the Eleventh Circuit's determination that the plaintiff's claim--based on similar allegations to those in
the current case--was "not moot and . . . therefore can proceed" suggests that the Eleventh Circuit
understood the plaintiff in that case as possessing standing.  See Kennedy, 828 F. App'x at 661.

12182(b)(2)(A) and therefore entitled to deference.[10]   Therefore, the court concludes

that Laufer's Second Amended Complaint states a claim for disability-based

discrimination under the ADA.  See U.L.S.T., 2020 WL 6487199, at *5 (citing Kennedy,

828 F. App'x at 661-63).  The Motion to Dismiss the Second Amended Complaint is

denied as to Ganesha Hospitality's argument that Laufer fails to state a claim for

discrimination.

## V.     CONCLUSION

For the reasons discussed above, the court denies the Motion to Dismiss the

Second Amended Complaint (Doc. No. 24).  Further, the court terminates as moot the

Motion to Dismiss the First Amended Complaint (Doc. No. 16).  The court determines

that oral argument is not necessary.


**SO ORDERED.**

Dated this 25th day of March 2021, at New Haven, Connecticut.


 /s/ Janet C. Hall 
Janet C. Hall
U.S. District Judge

---

[10] Ganesha Hospitality emphasizes that the Department of Justice's Notice of Proposed Rulemaking stated that the Department was "unable to issue specific regulatory language on Web site accessibility."  Def.'s Mem. at 12 (quoting Nondiscrimination on the Basis of Disability by Pub. Accommodations and in Commercial Facilities, 75 Fed. Reg. 56,236, 56,316 (Sept. 15, 2010)).  When read in context, it is clear that this passage uses the term "Web site accessibility" to refer to whether individuals are able to access websites at all.  See Nondiscrimination on the Basis of Disability by Pub. Accommodations and in Commercial Facilities, 75 Fed. Reg. at 56,316.  Laufer does not allege that she was unable to access the online reservations systems; she alleges that she suffered discrimination while accessing the online reservations systems.  The plain language of section 36.302(e)(1) clearly applies the regulation to "reservations made by any means."  28 C.F.R. § 36.302(e)(1) (emphasis added).  Any means includes the Internet.